**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LYLE BRADLEY POGOFSKY, | |
| Plaintiff, | Case No. 25 CV 11687 |
| v. | Honorable Sunil R. Harjani |
| BENJAMIN S POGOFSKY *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Lyle Bradley Pogofsky alleges that he is an heir to his late father and a beneficiary of the family trusts that his father established. He claims that upon his father's passing, his siblings, Defendants Benjamin Pogofsky and Lisa Pogofsky Sobelman, created a will and a new living trust for their mother that excluded him as an heir and beneficiary. Not only did they purportedly commit fraud upon the probate court in doing so, but as trustees, they moved the assets from the existing family trusts into the new living trust, effectively eliminating his inheritance and beneficial interests. Plaintiff sues Defendants under the Racketeer Influenced and Corrupt Organizations Act (RICO) for misrepresenting his inheritance and beneficiary status for years, misusing trust assets, and evicting him from his residence, and for violations of related federal criminal statutes and state law.

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure Rule 12(b)(6) for a failure to state a claim. The Court finds that the Complaint's allegations of racketeering activity only demonstrate individual interests that do not combine to form an enterprise. Plaintiff also fails to plausibly allege two predicate acts within ten years that establish a pattern of racketeering activity. His additional federal claims, based on criminal statutes that do not provide private rights of action, must likewise be dismissed. With all claims providing original jurisdiction dismissed and lacking diversity jurisdiction, the Court declines to exercise supplemental jurisdiction over the state-law claims. Accordingly, Defendants' motion to dismiss [68] is granted, and the Complaint is dismissed without prejudice.

## Background

Plaintiff and Defendants are the children of Larry Pogofsky, who passed in December 2010.[1] [62] ¶¶ 8–10. Plaintiff, who is allegedly a beneficiary of the Pogofsky family trusts, claims that Defendants committed fraud in probate court to disinherit Plaintiff and misused their positions as trustees of the family trusts to eliminate his beneficial interests. *Id.* ¶¶ 2–3. Beginning with the

---

[1] For purposes of reviewing this motion to dismiss under Rule 12(b)(6), the Court accepts as true, as it must, all factual allegations in the complaint, which includes its attachments and referenced documents. *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024).

probate court proceedings after their father's passing, Plaintiff identifies three occasions in early 2011 when Defendants filed documents with forged signatures of Plaintiff and the parties' incapacitated mother, Lynda Pogofsky. *Id.* ¶¶ 12–19, 27. Through these actions, Defendants established a will for their mother that did not include Plaintiff as an heir, and a living trust for her that did not include Plaintiff as a beneficiary. *Id.* ¶¶ 21–22, 24, 29; *see id.* at 15 n.7 (describing an altered life insurance policy). They then redirected all assets from the existing trusts into the new living trust. [62] ¶¶ 18, 21–22, 25. According to Plaintiff, he could not contest these actions because Defendants caused him to be arrested and criminally prosecuted during the time of the probate proceedings, which also resulted in an embarrassing news article about him. *Id.* ¶¶ 20, 40. Plaintiff alleges that he "was being secretly disinherited," and that Defendants' agents sent him several communications through May 4, 2012, that perpetuated the appearance that he was still an heir to his father's estate and that the family trusts had not changed. *Id.* ¶ 26.

After their actions upon the trusts, Defendants allegedly misused their positions as trustees. *Id.* ¶¶ 3, 31. In 2014, Defendant Ben allegedly solicited his signature as a beneficiary on a "Crummey letter," which misrepresented Defendant Ben's trust authority and created the appearance that he needed Plaintiff's consent. *Id.* ¶ 36. Then, starting in 2019, Defendants used trust assets to secure over $4 million of forgivable mortgage loans and concealed their transactions from Plaintiff. *Id.* ¶ 32. In 2023 and 2024, Plaintiff claims, his siblings misused their trustee positions. Plaintiff alleges that Defendants sent him letters and emails threatening to evict him if he did not leave his home. *Id.* ¶¶ 51, 55, [62-1] at 53–63, 68–70. Plaintiff also asserts that on May 2, 2024, Defendants sent him emails that claimed to be from their mother and pressured him to vacate his Chicago condominium. [62] ¶¶ 52–53. The next day, Defendant Ben used shell companies to transfer ownership of Plaintiff's condominium. *Id.* ¶¶ 33, 53. Later that year, police officers arrested and evicted Plaintiff from his condominium. *Id.* ¶¶ 45–48. Plaintiff alleges that one Defendant colluded with the police and continued to deny him access to the property after eviction. *Id.* ¶ 49.

Plaintiff recites other acts of misuse by Defendants, but he does not specify when they occurred. For example, he alleges that Defendants concealed trust investment losses, stole his engagement ring, approved unauthorized transactions of trust assets, made false statements to police officers, sent threatening communications to his fiancée, monitored him with cameras, and withheld family trust distributions from him. *Id.* ¶¶ 34–35, 37–44, 56, 63–65.

### Legal Standard

On a Rule 12(b)(6) motion, the court reviews the complaint and its attached or referenced documents for "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024). The court accepts all factual allegations in the complaint as true and reads them in the light most favorable to the plaintiff. *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020). Additionally, it may consider allegations in the plaintiff's response brief that elaborate on, and are consistent with, his factual allegations in the complaint. *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 & n.2 (7th Cir. 2021). It also holds a *pro se* plaintiff to less stringent standards and liberally construes his complaint. *Schillinger*, 954 F.3d at 994; *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

2

**Discussion**

Plaintiff asserts eighteen claims in his Complaint. He sues Defendants for violating RICO and also asserts five separate claims for criminal acts that allegedly support his RICO claim.[2] Plaintiff's remaining twelve claims are state-law claims based on the same alleged conduct.[3]

## I.  Civil RICO Claim (Count XII)

RICO permits a private plaintiff to sue for injuries to "business or property" caused "by reason of a violation of [Title 18, United States Code,] section 1962." 18 U.S.C. § 1964(c). Here, Plaintiff claims a RICO violation under Section 1962(c), which makes it unlawful for a person associated with any enterprise to participate in "the conduct of such enterprise's affairs through a pattern of racketeering activity." *Id.* § 1962(c). To sufficiently state a claim, Plaintiff must plead each element of that statute: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 336 (7th Cir. 2019) (citation omitted). Defendants argue that Plaintiff fails to adequately allege the second, third, and fourth elements.

### a.  Enterprise

Starting with the second element, RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and *any union or group of individuals associated in fact* although not a legal entity[.]" 18 U.S.C. § 1961(4) (emphasis added). An association-in-fact enterprise has three structural features: a "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). The common purpose is crucial, because without it, "every conspiracy to commit fraud that requires more than one person to commit is a RICO organization and consequently every fraud that requires more than one person to commit is a RICO violation." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 656 (7th Cir. 2015) (citation omitted). To allege a common purpose, the plaintiff must identify actions undertaken on behalf of the enterprise, as opposed to actions taken by the defendants to advance their individual self-interest. *United Food & Com. Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013). These actions cannot be only the predicate acts themselves. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 400 (7th Cir. 2009).

Several district court cases demonstrate how a common purpose is distinguished from individual interests among defendants and determined apart from the predicate acts. In *Bobb v. Swartz-Retson P.C.*, 2018 WL 4384292 (N.D. Ill. Sept. 14, 2018), the plaintiffs alleged that the defendants shared the common purpose of stealing money from them and driving down the value

---

[2] Extortion (Count IX), mail fraud (Count X), wire fraud (Count XI), mortgage fraud (Count XVII), and money laundering (Count XVIII).

[3] Breach of fiduciary duty (Count I), fraudulent concealment (Count II), constructive fraud (Count III), intentional infliction of emotional distress (Count IV), accounting (Count V), removal of trustee (Count VI), wrongful eviction (Count VII), wrongful arrest/malicious prosecution (Count VIII), harassment (Count XIII), stalking (Count XIV), defamation (Count XV), and life insurance fraud (Count XVI).

of their auto dealership so it could be bought at a discount. *Id.* at *6–7. The district court found that each defendant only received an amount of money corresponding to their act of stealing. *Id.* at *7. The motivation was the same, but there was no shared pot of money or other embodiment of a joint venture that allowed the court to infer the structure of an enterprise. *Id.* Thus, there was no common purpose. *Id.* Similarly, the court in *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671 (N.D. Ill. 2012), also found no common purpose supporting an enterprise. The plaintiff alleged that the defendants schemed to eliminate their personal liabilities from a construction loan. *Id.* at 687. However, the court found no interest in the outcome of the alleged scheme beyond each defendant's own interest in avoiding loan liability. *Id.* Because they were only interested in their own affairs, the complaint did not state any enterprise affairs. *Id.* A last example is *Green v. Morningstar, Inc.*, 2018 WL 1378176 (N.D. Ill. Mar. 16, 2018), in which the alleged common purpose was to direct investors towards certain investments that profited the defendants over competitors. *Id.* at *2, *5. The complaint described the predicate acts that accomplished the scheme, but when the court considered the complaint without those alleged acts, it found no remaining allegations that established an enterprise. *Id.* at *5–6. The complaint was only a collection of unlawful commissions without allegations supporting an agreement to act jointly. *Id.*

With those examples in mind, the Court considers whether this Complaint sufficiently states a common purpose. Plaintiff alleges that an association-in-fact enterprise exists between Defendants and their attorneys, financial agents, related entities, the Chicago Police Department, and the Cook County Sheriff's Office. [62] ¶ 11. That said, Plaintiff does not allege the enterprise's common purpose. Reading the *pro se* Complaint liberally, the common purpose of the enterprise could be for Defendants "to enrich themselves, conceal assets, and eliminate Plaintiff's beneficial interests." [62] ¶ 3. That, however, does not establish a separate purpose from Defendants' individual interests—self-enrichment at Plaintiff's expense. *See Bobb*, 2017 WL 4384292, at *7 (finding no common purpose based on the same goal of individually benefiting). Indeed, Plaintiff attributes Defendants' actions to their individual purposes of benefiting themselves at his expense. This is clear from the allegations that Defendants forged documents and prevented Plaintiff from participating in probate court so they could enforce a new living trust and will that "disinherited Plaintiff and redirected assets to [Defendants]" for personal benefit. [62] ¶¶ 22, 24, 70. Defendant then allegedly misused their positions as trustees to divert and misrepresent investments from the family trusts "for personal gain" and to convert assets "for personal benefit." *Id.* ¶¶ 31, 33, 114.

As for the other alleged RICO members, such as the Chicago Police Department, Plaintiff does not offer facts demonstrating their interest in the outcome of this scheme, such as some share in the benefits that were allegedly withheld from Plaintiff. *See Guaranteed Rate*, 912 F. Supp. 2d at 687 (finding no shared purpose where the defendants merely took their own respective profits from their respective actions related to the scheme). Although Plaintiff alleges that the probate attorneys sought legal fees for their services, he does not maintain that these fees were improper or incurred only because of the scheme. *See* [62] ¶ 26. Nor does he allege facts that infer a benefit conferred on the other RICO members that demonstrate their interest in Defendants' purposes. Stated another way, if the alleged predicate acts are removed from the Complaint, there is nothing left that demonstrates a common purpose. *See, e.g.*, *Green*, 2018 WL 1378176, at *5 (finding no purpose for an enterprise once the alleged predicate acts were removed from the complaint). Without a common purpose, Plaintiff does not sufficiently plead that an enterprise exists and cannot state a civil RICO claim.

Although the Complaint could be dismissed on this ground alone, Plaintiff will have an opportunity to amend. Because he may use that opportunity to cure deficiencies in his pleading, the Court will address Defendants' challenges to the third and fourth RICO elements.

### b. Pattern of Racketeering Activity

Defendants also attack Plaintiff's allegations supporting a pattern of racketeering activity. A "pattern of racketeering activity" requires at least two acts of racketeering activity within ten years of each other. 18 U.S.C. § 1961(5); *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011). To plead a pattern of racketeering activity, the Seventh Circuit uses the "continuity plus relationship" test, which requires a plaintiff to demonstrate (i) a relationship between the predicate acts, and (ii) as well as a threat of continuing activity. *Menzies*, 943 F.3d at 337.

### i. Racketeering Activity

The first step in establishing a pattern is identifying the underlying racketeering activity. "Racketeering activity" is statutorily defined to include violations of enumerated criminal laws, including those cited in the Complaint. *See* 18 U.S.C. § 1961(1). Where a plaintiff seeks to plead RICO's pattern element through predicate acts of fraud, the heightened pleading rule of Rule 9(b) applies. *Menzies*, 943 F.3d at 338. The plaintiff must plead the "who, what, when, where, and how" of the alleged fraud. *Id.* (citation omitted). That includes specifying which defendant allegedly committed the fraud when the RICO claim is brought against more than one defendant. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998).

According to Defendants, Plaintiff fails to allege predicate acts that are within ten years of each other and thus cannot support a pattern. Defendants first contend that their alleged conduct from 2011 to 2012, which purportedly established a fraudulent will and trust in probate court, caused only one injury and thus caused only one predicate act. But Plaintiff alleges that the communications he received about that will and trust constitute at least two acts of mail and wire fraud. [62] ¶ 110. The Seventh Circuit has cautioned that it "do[es] not look favorably on many instances of mail and wire fraud to form a pattern." *Menzies*, 943 F.3d at 338. For example, in *Slaney v. International Amateur Athletic Federation*, 244 F.3d 580 (7th Cir. 2001), the Seventh Circuit considered a civil RICO claim brought by a former Olympic runner against two sports organizations. *Id.* at 585. The plaintiff alleged that one defendant fraudulently mandated that she undergo a doping investigation, and that it mailed this mandate to her governing organization twice within two weeks. *Id.* at 599. The district court found that two mailings about one fraud did not equate to two predicate acts that established a pattern of racketeering activity, and the Seventh Circuit affirmed. *Id.*

In like manner, Plaintiff alleges that after Defendants created a new will and living trust for their mother, attorneys from the probate proceeding—*i.e.*, other alleged RICO members—sent him billing statements with copies of the allegedly fraudulent will and trust documents. [62] ¶ 26; [62-1] at 2, 4, 28–31. Three of the statements were delivered by the same attorneys, Marc Benjamin and Rebecca Michalek, and "declar[ed] him an heir." [62] ¶ 26. In other words, these attorneys made "a single fraudulent representation, reiterated" over three communications, which constitutes only one predicate act that does not sustain a pattern. *See Slaney*, 244 F.3d at 599. The fourth billing statement was also sent by Marc Benjamin, and the fifth billing statement attached the same

documents prepared by Rebecca Michalek. [62] ¶ 26; [62-1] at 2, 4, 28–31. While Plaintiff maintains that these two communications perpetuated the same message that he was an heir and beneficiary, he does not allege that they independently repeated that message or introduced a new misrepresentation. [62] ¶ 26. At best, they served as an extension of Marc Benjamin and Rebecca Michalek's misrepresentation and do not create independent predicate acts. Just as the two mailings about the same mandate were not two predicate acts in *Slaney*, Plaintiff's five alleged instances of mail and wire fraud about the same message are not five predicate acts that support a pattern.

Because those allegations only provide one predicate act, Plaintiff requires a second predicate act within ten years. *Slaney*, 244 at 599. The Complaint provides three contenders, which Defendants argue are insufficiently pled. The first act is the Defendants causing the police to arrest and charge Plaintiff in 2011. [62] ¶ 20. Plaintiff asserts that this act supports a claim of extortion or obstruction of justice, but his allegation is conclusory without facts permitting an inference that Defendants were involved. *See id.* The second act is Defendant Ben soliciting Plaintiff's signature as a beneficiary on a Crummey letter in 2014, which misrepresented Defendant Ben's trust authority and created the appearance that he needed Plaintiff's consent. *Id.* ¶ 36. The Complaint does not explain how presenting this allegedly false document to Plaintiff led to fraud. Plaintiff does not allege that this letter caused him financial injury or was presented to anyone else to misrepresent Defendant Ben's trust authority. Without more specific allegations, this does not constitute a predicate act. The third act is that between 2019 and 2024, Defendants allegedly obtained over $4 million in forgivable mortgage loans through JP Morgan, secured by trust assets, while concealing the transactions from Plaintiff. *Id.* ¶ 32. Plaintiff asserts that Defendants committed wire and mail fraud through these transactions, but he does not specify how many transactions, their amounts or dates, which trust assets were used to secure the loans, which Defendant approved each transaction, or other specific allegations that would satisfy Rule 9(b)'s heightened pleading standard. These alleged predicate acts are sufficiently pled and cannot establish a pattern.

The remaining allegations in the Complaint are those about Defendants' conduct from 2023 to 2024 relating to his arrest and eviction. Plaintiff maintains that these acts constitute wire and mail fraud, money laundering, extortion, and obstruction of justice. [62] ¶ 110. The alleged wire and mail fraud are based on Defendants sending him letters and emails that threatened to evict him if he did not leave his home. *Id.* ¶¶ 51, 55, [62-1] at 53–63, 68–70; *see also* [72] at 16. However, he does not plead specifically who authored the letters and emails. The only communication he describes specifically is a letter from non-party Lynda Pogofsky, and the only letters and emails he attaches as exhibits to the Complaint are from her, too. [62] ¶ 53; [62-1] at 53–63, 68–70. He alleges that "Defendants" impersonated their mother in these communications, but does not specify which Defendant did so, as is necessary for providing Defendants with sufficient notice of the claims against them. *See Goren*, 156 F.3d at 726; [62] ¶ 52.

Next, Plaintiff's claim of money laundering is based on Defendant Ben allegedly transferring possession of Plaintiff's condominium into a shell company. [62] ¶¶ 33, 53, 110. Although he labels the transaction as money laundering, he does not sufficiently plead facts that show the elements of Section 1956, such as alleging that this transaction created any proceeds or used the property as proceeds, or that the property was used in a plausibly stated unlawful activity. *See* 18 U.S.C § 1956; *e.g.*, *Holland v. Cocagne*, 2025 WL 2506497, at *3 (N.D. Ind. Aug. 28, 2025)

6

(finding that the plaintiff did not plausibly plead money laundering as a predicate act because he did not allege facts meeting elements of Section 1956).

Finally, Plaintiff claims of extortion and obstruction of justice are based on collusion with police officers to wrongfully arrest him. [62] ¶¶ 45–49, 110. The Complaint describes three interactions with police in 2024, the first of which occurred in September 2024 and identifies no involvement by either Defendant. *Id.* ¶¶ 45–46. Then, a "Defendant" allegedly "colluded" with the police for the other two interactions. *Id.* ¶¶ 47–49. These allegations are conclusory because Plaintiff fails to identify which Defendant acted and provides no facts demonstrating or inferring any involvement with the police. *See id.* Ultimately, Plaintiff fails to plausibly plead a predicate act that supports a pattern of racketeering activity.

### ii. Continuity

Even if the Court accepted the predicate acts, Defendants contend that Plaintiff fails to plausibly allege continuity. Proceeding to the Seventh Circuit's "continuity plus relationship" test, a plaintiff may satisfy the continuity prong in two ways. *Menzies*, 943 F.3d at 337. First, the plaintiff may demonstrate a "closed-ended" series of misconduct, where "there were enough predicate acts over a finite time to support a conclusion that the criminal behavior would continue." *Id.* Alternatively, the plaintiff may plead an "open-ended" series of misconduct, where "a concrete threat remains for the conduct to continue moving forward." *Id.*

### 1. Continuity Based on Closed-Ended Conduct

For the first method of showing continuity, a closed-ended series of conduct depends on the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries. *Menzies*, 943 F.3d at 337. The duration of the alleged activity "is the single most important aspect of the closed-ended continuity analysis." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 781 (7th Cir. 1994).

The decision in *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016 (7th Cir. 1992), is instructive. There, the plaintiff claimed that the predicate acts behind the alleged schemes took place over nine months. *Id.* at 1024. The Seventh Circuit found that the "one-shot scheme" over this period did not constitute a substantial period, and it noted its cases finding that similar time frames, including sixteen and eighteen months, were insufficient. *Id.* It also found that alleged predicate acts intended to conceal the underlying criminal activity did not extend the duration of the scheme. *Id.* The conspiracy ended when the design to commit substantive misconduct ended, and "steps to bury their traces, to avoid detection and punishment" did not extend it. *Id.*

The goal and time frame of the alleged scheme are also relevant to whether continuity is sufficiently pled in this case. Plaintiff's alleged predicate acts in 2011 and 2012 occurred from January 14, 2011, when Defendants allegedly forged documents to present in probate court, to May 14, 2012, when other alleged RICO members sent misleading documents to Plaintiff. [62] ¶¶ 13, 26. Those acts span seventeen months, which fall into a comparable range as the acts that the Seventh Circuit found were not closed-ended in other cases. *See Midwest Grinding*, 976 F.2d at 1024. More significantly, Plaintiff's primary complaint is that Defendants cut him out of the

trusts. *See* [62] ¶ 3, 30, 38, 64 – 65, 112. Assuming his allegations are true, as the Court must at this stage, Defendants accomplished that goal in 2011. Their "one-shot scheme" was accomplished, and the Complaint gives no indication that they can or will repeat their acts against another beneficiary of the trusts. The other *Menzies* factors also point to the conclusion that there is no continuity—there is only one victim, one scheme, and one type of injury. *See Midwest Grinding*, 976 F.2d at 1025 (finding these factors also weighed against finding continuity).

Plaintiff's alleged predicate acts in 2023 and 2024 fare no better. The communications threatening evictions, the property transfer, and the eventual arrest and eviction span from February 2023 to December 2024, which is relatively close to the periods found insufficient by the Seventh Circuit. [62] ¶¶ 33, 45–49, 51–53, 55; [72] at 16; *see Midwest Grinding*, 976 F.2d at 1024 (noting cases where a single scheme over several years did not establish a pattern). They also constitute one scheme culminating in one injury for one victim—Plaintiff's eviction. The Complaint demonstrates a scheme that has been accomplished with no continuing threat.

### 2. Continuity Based on Open-Ended Conduct

The other way Plaintiff may show continuity is to allege facts that demonstrate an open-ended series of conduct, where the defendants' actions pose a specific threat of repetition, that their predicate acts form part of the defendant's ongoing and regular way of doing business, or that they operate a long-term association for criminal purposes. *Menzies*, 943 F.3d at 337.

The Seventh Circuit looked for one of these conditions in *Menzies*, where the plaintiff alleged that the defendants pitched him a tax shelter strategy that was a fraudulent scheme and led him to be audited and face significant fines. 943 F.3d at 332–33. When the court analyzed the open-ended theory of a pattern of racketeering, it saw in the complaint only a few conclusory assertions to infer a future threat of repetition. *Id.* at 342–43. It held that the bald assertion that the fraudulent strategy could be used by other taxpayers did not sufficiently demonstrate a continued threat. *Id.* at 343. Rather, the complaint showed that the tax attorney who pitched the strategy to the plaintiff was indicted for tax fraud in 2005 and convicted in 2008. *Id.* There were no allegations indicating that the scheme would continue. *Id.* Here, the Complaint suffers from the same deficiency. Plaintiff alleges that Defendants eliminated him as an heir and beneficiary already, and that they evicted him from his condominium. The Complaint gives no indication that there are more steps to the scheme or that Defendants can and will do the same to others. In other words, there are no allegations anticipating further predicate acts that allow the Court to conclude that a concrete threat remains.

### c. Civil RICO Statute of Limitations

As the Court is dismissing the Complaint for failure to allege plausible RICO counts, it does not reach the Defendants' statute of limitations arguments. Nevertheless, as the Defendants raised valid concerns and the Court is granting leave to amend, the Court will briefly review the relevant standards.

A statute-of-limitations defense is an affirmative defense that is a ground for dismissal at the pleading stage only if it is clear from the face of the complaint. *Nw. Ill. Area Agency on Aging v. Basta*, 145 F.4th 695, 700–701 (7th Cir. 2025). Generally, questions of timeliness should be

reserved for summary judgment or trial if "there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). For a civil RICO claim, there is a four-year statute of limitations that begins to run when the plaintiff knew or should have known about the injury, even if the plaintiff had not yet discovered the pattern. *Id.* at 926. Courts often decline to grant a motion to dismiss where the complaint lacked the information to determine when a reasonable plaintiff would be expected to be aware of their injury. *See, e.g.*, *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Procs.*, 159 F. Supp. 3d 898, 912 (N.D. Ill. 2016); *Turow v. Glazier*, 2022 WL 3755138, at *6 (N.D. Ill. Aug. 30, 2022); *McKinney v. Panico*, 2022 WL 4551695, at *7 (N.D. Ill. Sept. 29, 2022).

The Court notes that Plaintiff bases his civil RICO claim partially on events that occurred over fourteen years ago. At the same time, Plaintiff alleges that he was "secretly disinherited" in the Complaint. [62] ¶ 26. In his response brief, he mentions certain documents he obtained in 2020 and refers to a "subsequent investigation" that revealed relevant probate documents. [72] at 8. The Court would need to know when Plaintiff became, or should have become, aware of his injury before deciding whether the claim is barred. To do so at this stage, it would require that information to be clear from the face of the Complaint.

## II. Federal Claims Brought Under Criminal Statutes (Counts IX–XI, XVII–XVIII)

In addition to pleading racketeering activity in support of his civil RICO claim, Plaintiff asserts separate claims for those underlying criminal violations. Defendants move to dismiss the wire and mail fraud counts brought under Title 18, United States Code, Sections 1341 and 1343 because these criminal statutes do not provide a private right of action. When statutory text does not explicitly provide a private right of action, a court may imply one if the text of the statute demonstrates that Congress intended to create a private right and remedy. *Charles v. Anna-Jonesboro Nat'l Bank*, 2023 WL 6818643, at *2 (7th Cir. Oct. 17, 2023) (citing *Ind. Prot. & Advoc. Servs. v. Ind. Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 375 (7th Cir. 2010) (en banc)). An implied right is rare because criminal statutes are usually for the benefit of the general public, not a particular class. *Id.* The Seventh Circuit has acknowledged that Section 1341 does not provide a private right of action for mail fraud. *McGee v. Nissan Motor Acceptance Corp.*, 619 F. App'x 555, 555–56 (7th Cir. 2015); *Radler v. Ally Fin., Inc.*, 2025 WL 274460, at *2 (7th Cir. Jan. 23, 2025). While it has not expressly weighed on whether Section 1343 provides one for wire fraud, other courts of appeals have held that it does not. *See Young v. Brennan*, 2018 WL 10798653, at *7 (N.D. Ill. Feb. 15, 2018) (citing *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997) and *Napper v. Anderson, Henley, Shields, Bradford & Pritchard*, 500 F.2d 634, 636 (5th Cir. 1974)); *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) (affirming dismissal of wire fraud claim because Section 1343 does not provide a private right of action); *Obianyo v. Tennessee*, 518 F. App'x 71, 72 (3d Cir. 2013) (same). The Court finds those cases persuasive and does not read the statute to show a congressional intent warranting an implied private right under Section 1343.

Although Defendants categorize Plaintiff's claims for mortgage fraud, extortion, and money laundering as state-law claims, the Complaint identifies federal statutes under which Plaintiff asserts these claims, even if not listed in the count headings. [62] ¶¶ 39, 134, 140 (citing 18 U.S.C. §§ 1341, 1343, and 1344 for mortgage fraud, § 1951 for extortion, and § 1956 for money

9

laundering). Regardless, Plaintiff's claims under these statutes also fail because there are no private rights of action. Indeed, Plaintiff's mortgage fraud claim is partially based on the same statutes as wire and mail fraud, which do not have private rights. Its other basis in the Complaint is the bank-fraud statute, 18 U.S.C. § 1344, but Section 1344 neither provides an express right nor includes language that warrants an implied right, *see Charles*, 2023 WL 6818643, at *2. As for extortion, the Seventh Circuit has rejected a private right under Section 1951. *Stanard v. Nygren*, 658 F.3d 792, 794 (7th Cir. 2011); *Price v. Village of Homewood*, 2024 WL 4502106, at *2 (7th Cir. Oct. 16, 2024). Similarly, other district courts have declined to imply a right into Section 1956 for money laundering. *See Shah v. Rodino*, 2014 WL 1230733, at *8 (N.D. Ind. Mar. 24, 2014) (collecting cases); *Backer v. USD 30 Billion MTN Programme*, 2017 WL 6387732, at *6 (S.D.N.Y. Sept. 30, 2017) (collecting cases). Consequently, Plaintiff fails to state a claim under all these criminal statutes.

### III.    State-Law Claims (Counts I–VIII, XIII–XVI)

As a final matter, the Court turns to Plaintiff's remaining twelve state-law claims.[4] When a court has dismissed all claims over which it had original jurisdiction, it generally will not exercise supplemental jurisdiction over remaining state-law claims. *Vargas v. Cook Cnty. Sheriff's Merit Bd.*, 952 F.3d 871, 876 (7th Cir. 2020); 28 U.S.C. § 1367(a), (c)(3). Because the Court is dismissing all Plaintiff's federal claims, it no longer has federal question jurisdiction over Plaintiff's remaining state-law claims. *See* 28 U.S.C. § 1331. Further, Plaintiff alleges that he and Defendant Lisa are Illinois residents, so there is not complete diversity between the parties for diversity jurisdiction. [62] ¶¶ 8, 10; *see Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R., Inc.* 13 F.4th 560, 571 (7th Cir. 2021) (citing 28 U.S.C. § 1332). Without original jurisdiction remaining, the Court declines to exercise supplemental jurisdiction and dismisses them without prejudice.

### Conclusion

For these reasons, Defendants' motion to dismiss [68] is granted, and the Complaint is dismissed without prejudice. Plaintiff fails to allege an enterprise or pattern of racketeering activity that makes his civil RICO claim plausible, and there are no private rights of action for his remaining federal claims. The Court lacks original jurisdiction over the remaining state-law claims and declines to exercise supplemental jurisdiction. Because a plaintiff should be given at least one opportunity to amend before his action is dismissed, the Court grants Plaintiff leave to file an amended complaint if such an amendment is consistent with his obligations under Federal Rule of Civil Procedure 11. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi.& Nw. Ind.*, 786 F.3d

---

[4] The Complaint does not indicate that Plaintiff intended to bring a civil rights claim against Defendant Ben under Title 42, United States Code, Section 1983. In any event, Plaintiff does not plausibly state a Section 1983 claim. He must allege that Defendant Ben, a private individual, was acting under color of state law, or that he conspired with the officers who arrested Plaintiff and knew the scope of their agreement. *See London v. RBS Citizens, N.A.*, 600 F.3d 742, 746 (7th Cir. 2010); *Sypolt v. Ill. Gaming Bd.*, 2022 WL 170063, at *7 (N.D. Ill. Jan. 19, 2022) (citing *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)). The Complaint alleges that Defendant Ben made false reports to the police, not that he acted *as* an officer, under color of state law. [62] ¶ 41. It also alleges that he "direct[ed] police officers . . . to harass and intimidate Plaintiff" before Plaintiff was arrested, but that does not demonstrate that he knew that an arrest was within the scope of the alleged conspiracy. *Id.* at 12 n.5.

510, 519 (7th Cir. 2015). If Plaintiff does not file an amended complaint by July 10, 2026, then the dismissal will automatically convert to a dismissal with prejudice.

**SO ORDERED.**

Dated: May 26, 2026

Sunil R. Harjani
United States District Judge